In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 25-1355

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOHN TYLER JONES,

*Defendant-Appellant.*

———————

Appeal from the United States District Court for the
Central District of Illinois.
No. 4:23-cr-40004 — **Sara Darrow**, *Judge.*

———————

ARGUED APRIL 8, 2026 — DECIDED JULY 31, 2026

———————

Before SCUDDER, ST. EVE, and KOLAR, *Circuit Judges.*

KOLAR, *Circuit Judge.* Federal agents obtained a warrant to search John Tyler Jones's mobile home for evidence of drug trafficking. Their affidavit asserted two bases for probable cause: first, a series of phone calls and drug deliveries over the past year tied indirectly to Jones's home; and second, two searches of trash outside the home that turned up marijuana scraps and vacuum-seal packaging material. After agents found methamphetamine in the home, Jones was indicted on

drug-trafficking charges. The district court denied his motion to suppress, finding the marijuana from the trash pulls sufficient, without more, to justify the search. Jones now appeals that denial after entering a conditional guilty plea.

We affirm on narrow grounds. We conclude that officers reasonably relied on the warrant in good faith where the affidavit's other allegations—describing an ongoing drug conspiracy tied to the residence—at the very least came close to satisfying probable cause for a search warrant seeking evidence of drug trafficking. This is so with or without the discarded marijuana.

## I. Background

In November 2022, Drug Enforcement Administration agent Jereme Hatler applied for a warrant to search Jones's mobile home in Moline, Illinois, for evidence of methamphetamine, marijuana, and fentanyl trafficking. Hatler attested that he had been investigating a drug-trafficking organization spanning Arizona and the Quad Cities area of Illinois and Iowa. The Quad Cities include Davenport and Bettendorf in Iowa and Rock Island and Moline in Illinois.

Hatler's affidavit laid out a string of events over a year and a half that led agents to Jones's door. In April 2021, law enforcement intercepted a package containing money sent from Davenport to Phoenix, Arizona. Then in September 2021, they intercepted another parcel sent from the Phoenix area to Davenport containing methamphetamine and fentanyl. A person identifying himself as "John" called the U.S. Postal Service's customer-service line three times in October 2021 asking about the status of the second package. That caller's number was associated with the name "John Montana" and an

address in Rock Island, Illinois. Records from the Illinois Secretary of State showed that the same Rock Island address appeared on Jones's driver's license, though the affidavit does not say when law enforcement obtained this information.

Then in May 2022, the affidavit explained, law enforcement arrested a drug courier traveling from Arizona to the Quad Cities. The courier's phone history allowed law enforcement to connect Jones to the drug organization. It showed calls to numbers that had, in turn, called persons of interest in the drug investigation. One of these intermediate numbers (the affidavit did not specify to whom it belonged) had, in April 2021, been in contact with a number belonging to Torianna McCarty. And utility records showed McCarty lived with Jones at an address in a Moline mobile-home park.

Law enforcement twice pulled (and then searched) trash outside the Moline address over two weeks in October 2022. The first trash pull turned up a minute quantity of discarded marijuana, as well as mail and delivery receipts addressed to McCarty and Jones. The second recovered more marijuana scraps and mail to Jones, plus two vacuum-seal bags and an opened U.S. Postal Service shipping box. Hatler attested that, in his experience, these kinds of bags were commonly used to package drugs.

A magistrate judge signed off on the warrant, and law enforcement executed it twelve days later. Agents found not only marijuana in Jones's and McCarty's home, but over eight hundred grams of methamphetamine. Jones was indicted for possession with intent to distribute the latter drug under 21 U.S.C. § 841(a)(1) and (b)(1)(A).

Jones moved to suppress the evidence recovered from the search, arguing the warrant lacked probable cause and was thus invalid. The district court denied his motion. It observed that the warrant was "not an easy read" (we agree) and that much of the supporting information tying Jones's Moline address to the drug organization was "old" and "very attenuated." But the district court found a simpler way to uphold the search: it concluded under *United States v. Leonard*, 884 F.3d 730 (7th Cir. 2018), that the marijuana recovered from Jones's trash independently provided probable cause to search the residence.

Jones then pled guilty but reserved his right to appeal the suppression ruling. He now brings that appeal, and we appointed him counsel.[1]

## II. Discussion

We review the denial of a motion to suppress evidence seized through a warrant-authorized search under a "complex" standard. *United States v. Rees*, 957 F.3d 761, 764 (7th Cir. 2020). The district court's findings of historical fact are reviewed for clear error and its legal conclusions *de novo*. *Id.* at 764 n.1. On the "mixed question" of whether the facts add up to probable cause, "we give no weight to the district court's decision" but "great deference" to the magistrate judge who issued the warrant. *Id.* (citation omitted).

Applying this standard, we conclude the district court correctly denied Jones's motion to suppress. But we get there by a different route. We do not rely on the marijuana found in Jones's trash as the sole, or even primary, basis for probable

---

[1] We thank appointed counsel for their able service on Jones's behalf.

cause. Rather, we think the other information presented in the affidavit came close enough to satisfying probable cause for a drug-trafficking search that law enforcement could reasonably have relied on the warrant in good faith.

### A. The Trash-Pull Marijuana

The district court relied on our holding in *Leonard* to find the small amounts of marijuana in Jones's trash sufficient for probable cause. 884 F.3d at 734–35. But *Leonard* may not compel this result.

In *Leonard*, police searched a suspect's home after conducting two trash pulls one week apart that yielded "indicia of residency and tested positive for cannabis." *Id.* at 733. We held that "two trash pulls taken a week apart, both testing positive for cannabis, are sufficient standing alone to establish probable cause for a search warrant." *Id.* at 734–35. In so holding, we found it "irrelevant" whether this information "supporte[d] an inference that [the defendant] was *dealing drugs*," since "[p]ossession of marijuana [was then] illegal under federal and Illinois law." *Id.* at 734 n.1.

On appeal, Jones distinguishes *Leonard* because the search warrant for Jones's residence only specified drug *trafficking*—not simple possession—as the target offense. And he contends that we can no longer reasonably infer trafficking from small quantities of marijuana found in residential trash, as Illinois has legalized recreational use of the drug in specific circumstances since *Leonard* was decided. *Cf. People v. Redmond*, 2024 IL 129201, ¶ 66 (2024) (holding that odor of burnt marijuana, standing alone, no longer provides probable cause for a warrantless vehicle search in Illinois state court).

The government, for its part, reads *Leonard* to hold that even small quantities of marijuana in residential trash can suggest not just simple possession, but trafficking too, if repeatedly found.[2] It also contends that the trash pulls supplied probable cause to search for *some* crime—even if not the one listed in the warrant—since simple marijuana possession remains federally illegal. *See* 21 U.S.C. §§ 812(c)(10), 844(a); *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (reasoning that "drugs are contraband, and the police have a right to seize them, pursuant to a search warrant, wherever they are likely to be present").

We do not decide if *Leonard* supports affirmance here. *Leonard* did not hold, as the government claims, that small quantities of marijuana repeatedly recovered from a suspect's trash could, "standing alone," provide probable cause for drug trafficking. 884 F.3d at 735. Its holding rested on the critical point that the trash pulls would have provided probable cause for simple marijuana possession (setting aside whether the government would realistically have charged that offense in practice). *Id.* at 734 n.1.

---

[2] Aside from *Leonard*, the government also cites *United States v. Billian*, 600 F.3d 791 (7th Cir. 2010), and *United States v. McDuffy*, 636 F.3d 361 (7th Cir. 2011), in support of its position. Both are distinguishable because they involved not only discarded marijuana, but also other allegations supporting an inference of trafficking. *Billian*, 600 F.3d at 793 (tip from informant that defendant was selling marijuana from his home, plus discovery of "scale" in car belonging to defendant); *McDuffy*, 636 F.3d at 362–64 (reports of "'non-stop' and 'obvious' drug traffic" outside defendant's home, plus defendant's prior drug convictions). Only *Leonard* addresses whether discarded marijuana "standing alone" can supply probable cause for a search, as the district court held here. 884 F.3d at 735.

But *Leonard* did not specify whether the warrant it considered listed both trafficking and simple possession as the target offenses, or—if not—whether the government could still validly search for an offense not specified in the warrant. We have doubts that *Leonard* applies where law enforcement's trash pulls give probable cause for simple possession but the warrant seeks only to search for evidence of trafficking. *See United States v. Taylor*, 63 F.4th 637, 661 (7th Cir. 2023) (where "[t]he affidavit supported probable cause for bestiality, but not for child pornography, while the typed and signed warrant was facially valid for child pornography [only,] … the constitutionality of th[e] search can be based only on probable cause to search for evidence of bestiality"); *Church*, 823 F.3d at 361 (Griffin, J., concurring in the judgment) (arguing that "mere evidence of possession of small quantities of marijuana" cannot "authorize carte blanche access to search for *any* evidence of *any* criminal activity").

## B. The Other Allegations

Regardless, we need not dwell on the government's broad reading of *Leonard*. The affidavit here contained far more information than the discarded marijuana to suggest that evidence of drug trafficking—not just possession—might be found in Jones's home. And those allegations, read in their totality, at the very least came close enough to satisfying the probable-cause standard for such evidence that law enforcement could reasonably have relied upon the warrant in good faith.[3]

---

[3] While the district court did not rely on these other allegations in denying the motion to suppress, we may affirm "on any basis identified

We will not suppress evidence if law enforcement has acted in "objectively reasonable reliance on a subsequently invalidated search warrant." *United States v. Leon*, 468 U.S. 897, 922 (1984). We presume good faith if law enforcement sought and obtained a warrant, and the burden to rebut that presumption is Jones's. *United States v. Woodfork*, 999 F.3d 511, 520 (7th Cir. 2021). He can do so by showing any of three things: "(1) the judge issuing the warrant abandoned his detached and neutral role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable." *Id.* at 519 (citation omitted). Jones invokes only the third theory—that the supporting affidavit was deficient past the point of good-faith reliance.

Meeting this burden is "no small feat," and Jones has not done so here. *United States v. Lickers*, 928 F.3d 609, 619 (7th Cir. 2019). The probable-cause standard "is far short of certainty—it requires only a probability or substantial chance of criminal activity, not an actual showing of such activity, and not a probability that exceeds 50 percent (more likely than not), either." *United States v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012) (cleaned up). "The task of the issuing judge is to make a 'practical, commonsense decision' whether, in light of the facts in the affidavit, there is a fair probability that contraband or evidence of a crime will be discovered in a particular place." *United States v. Douglas*, 164 F.4th 1017, 1022 (7th Cir. 2026) (citation omitted).

---

in the record that was argued below." *United States v. Gil-Lopez*, 825 F.3d 819, 822 (7th Cir. 2016) (citation omitted).

While the affidavit in this case was not a model of clarity, its allegations—read carefully and as a whole—at the very least came close to satisfying this standard for drug trafficking. We cannot say the warrant was "so lacking" in probable cause that officers could not have relied on it in good faith. *Woodfork*, 999 F.3d at 519.

The affidavit showed that law enforcement began investigating a drug-trafficking organization between the Phoenix area and the Quad Cities as early as April 2021. In October 2021, they had evidence that "John" was likely involved with the organization based on a series of suspicious phone calls about the status of a drug delivery. By May 2022, they arrested a drug courier traveling from Arizona to the Quad Cities who was in phone contact with unnamed individuals; one of those individuals, in turn, was in contact the prior year with a woman who lived at the same address as a "John Jones." This address, true, was different from the Rock Island one associated with "John's" phone number from the prior October. But Jones's driver's license listed that Rock Island address, which was in the same metropolitan area as the Moline address. And by October 2022, police had recovered not only marijuana but also suspicious packaging material from Jones's trash. These events, taken together, tied Jones's Moline residence to the organization.

Jones argues that the affidavit's allegations, stretching back over a year before the search, were too stale to support probable cause.[4] More recent information would have been

---

[4] Separately, Jones argues that the information recovered from the two trash pulls in mid-October 2022 was too stale to support probable cause by the time law enforcement applied for and executed the warrant the following month. But Jones likely waived this argument by failing to present

preferable. But the "[p]assage of time is less critical when the affidavit refers to facts that indicate ongoing continuous criminal conspiracy." *United States v. Pless*, 982 F.2d 1118, 1126 (7th Cir. 1992). Those facts were present here as the intervening events between the October 2021 phone call and November 2022 search showed an active and ongoing drug-trafficking organization. And the packaging material found in Jones's trash within a month of the search was "more recent information supporting probable cause [that] freshen[ed] information that might otherwise be stale." *United States v. Bradford*, 905 F.3d 497, 504 (7th Cir. 2018). We cannot say, then, that the warrant was deficient enough to make officers' reliance on it "entirely unreasonable"—quite the opposite. *Woodfork*, 999 F.3d at 519.

Jones's attempts to overcome the good-faith exception are unpersuasive. The out-of-circuit cases he cites dealt with affidavits that did not lay out a pattern of ongoing trafficking activity, or did so for a different controlled substance than the one ultimately searched for. *See United States v. Lyles*, 910 F.3d 787, 797 (4th Cir. 2018) (search based on suspect's appearance in decedent's phone records and marijuana recovered from single trash pull); *United States v. Ward*, 967 F.3d 550, 554–55 (6th Cir. 2020) (same, plus allegations of suspect's unspecified past drug offenses); *United States v. Underwood*, 725 F.3d 1076, 1086 (9th Cir. 2013) (search for *ecstasy*-trafficking evidence based on suspect's delivery of crates with unknown contents

---

it below. *See United States v. Jackson*, 103 F.4th 483, 488 (7th Cir. 2024) ("We have repeatedly held that a party that fails to press an argument before the district court waives the right to present that argument on appeal." (citation omitted)). And in any event we view the discarded marijuana as minimally if at all relevant to our ultimate holding here.

and observation of *marijuana* at suspect's home). The warrant at issue here, by contrast, described an ongoing pattern of drug trafficking between Arizona and the Quad Cities that indirectly tied back to Jones's residence.

To be sure, law enforcement could have done more to bolster the connection between Jones's residence and the drug-trafficking organization. But their allegations were such that a reasonable officer could have relied on them in executing the warrant. This is not one of the "limited circumstances," then, in which we will find the presumption of good faith to have been overcome. *Lickers*, 928 F.3d at 619 (citation omitted).

### III. Conclusion

For the reasons stated, we AFFIRM the district court's denial of Jones's motion to suppress.